Peggy Hunt (Utah State Bar No. 6060)
Lon A. Jenkins (Utah State Bar No. 4060)
Sarah E. Goldberg (Utah State Bar No. 13222)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
       jenkins.lon@dorsey.com
       goldberg.sarah@dorsey.com

*Attorneys for Peggy Hunt, Chapter 7 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>TNX Automotive Services, LLC,<br><br>          Debtor. | Bankr. Case No. 14-30208<br><br>Chapter 7<br><br>Honorable R. Kimball Mosier |

**CHAPTER 7 TRUSTEE'S MOTION TO SELL PROPERTY OUT OF THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL CLAIMS AND
INTERESTS AND SUBJECT TO HIGHER AND BETTER OFFERS**

Pursuant to 11 U.S.C. §§ 363(b) and (f) and Federal Rule of Bankruptcy Procedure 6004,

Peggy Hunt, the duly appointed Chapter 7 trustee (the "Trustee" of "Seller")[1] for the

bankruptcy estate of TNX Automotive Services, LLC  ("TNX" or "Debtor"), hereby

moves this Court for entry of an Order approving the sale to Larry Hendricks ("Hendricks" or

"Buyer") of the Trustee's rights and interests (the "Assets" as defined below) in accordance with

and pursuant to the Asset Purchase Agreement attached hereto as **Exhibit 1** (the "Agreement"),

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Asset Purchase
Agreement.

free and clear of interests and subject to higher and better offers, with valid interests, if any, in

such property attaching to the net sale proceeds.  This Motion is supported by the *Declaration of*

*Peggy Hunt* (the "Trustee Declaration") filed concurrently herewith.  In support hereof, the

Trustee states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

*General*

4.      Seller is the court-appointed trustee under Title 11 of the United States Code, 11

U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), of the Debtor that was the subject of an

involuntary Chapter 7 petition under the Bankruptcy Code on September 26, 2014 (the "Petition

Date"), in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Case").

5.      On November 21, 2014, the Court entered an *Order Granting Relief Under 11

U.S.C. § 303(h)* [Docket No. 14].

6.      The Trustee was appointed as the interim trustee on November 21, 2014 [Docket

No. 15], and became the permanent trustee at the meeting of creditors pursuant to 11 U.S.C. §

341 held and concluded on January 7, 2015.

-2-

7.     TNX is in the business of developing and licensing a plan and operating system for providing specialty automotive diagnostic and repair services to the public under the proprietary mark, "Tunex." *See* Trustee Declaration at ¶ 5.

8.     At the January 7, 2015 first meeting of creditors Debtor appeared *pro se* through its former President, Nick Butterfield.  Through Mr. Butterfield and communications with creditors, as well as review of documents made available to the Trustee, the Trustee learned that TNX is a party, as franchisor, to a number of franchise and/or license agreements ("Franchise Agreements").  *See* Trustee Declaration at ¶ 6.  A schedule of the known franchise and/or license agreements to which TNX is a party is attached to the Agreement as Exhibit A.

9.     As was revealed in the Trustee's subsequent investigation, Debtor is also the owner of certain trademarks and logos, specifically owning one federal registration for the trademark "Tunex" (Trademark Registration #1144724, U.S. Serial Number 73146884) which covers certain automotive diagnostic and repair services ("Trademark").  Among other things, Debtor licenses the name "Tunex" to its franchisees pursuant to the Franchise Agreements.  *See* Trustee Declaration at ¶ 7.

10.     Debtor also owns certain goodwill ("Goodwill"), accounts receivable owing by franchisees ("Accounts Receivable"), a promissory note in the amount of approximately $15,000 owing by ones of its franchisees, Karl Mason ("Note"), and certain personal property and equipment ("Equipment") used in its business operations.  *See* Trustee Declaration at ¶ 8.

11.     All of the Trademark, Goodwill, Accounts Receivable, Note and, to extent of any Debtor's remaining rights thereunder, the Franchise Agreements, are defined as "Assets" under

the attached Agreement.  The Equipment is not one of the Assets being sold under the

Agreement but will be subject of a separate sale at a later date.  *See* Trustee Declaration at ¶ 9.

12.    The Trustee has obtained an *Order* of the Court extending her time to assume or

reject executory contracts and unexpired leases until April 6, 2015 [Docket No. ___].

13.    The Trustee's accountants, based on the best information available to them, have

placed a face amount value on Debtor's Accounts Receivable of approximately $433,000, which

amount includes both pre-and postpetition royalty payments owing under both expired and

unexpired Franchise Agreements.  *See* Trustee Declaration at ¶ 11.

14.    However, Debtor ceased its business operations, and ceased providing services to

its franchisees under the Franchise Agreements, in mid-June 2014.  As a result, a number of

franchisees filed lawsuits against the Debtor prepetition.  In addition, the face amount of

Debtor's Accounts Receivables includes amounts owing under a number of expired Franchise

Agreements which may make collection difficult.  *See* Trustee Declaration at ¶ 12.

15.    Because of Debtor's cessation of services to its franchisees under the Franchise

Agreements in June 2014, the Trustee's present intention is to not seek assumption and

assignment of the Franchise Agreements.  *See* Trustee Declaration at ¶ 13.

16.    The Trustee has determined that the value of the Assets will be best realized and

maximized by selling the Assets as contemplated under the Agreement pursuant to 11 U.S.C.

§363, free and clear of liens, claims and encumbrances, with valid liens, if any, to attach to the

proceeds of sale.  *See* Trustee Declaration at ¶ 14.

17.    Prior to February 26, 2015, the Trustee had received four (4) offers for the

purchase of a portion or all of Debtor's assets.  On February 27, 2015, the Trustee requested the

each of the bidders provide a renewed "best offer" to the Trustee on or before March 6, 2015.
*See* Trustee Declaration at ¶ 15.

18.    Following the bidders' submission of renewed offers, the offer of Buyer was
determined by the Trustee to be the highest and best offer, offering a fair and reasonable price for
the Assets.  The Trustee and her counsel have spent the past several days negotiating with Buyer
the terms of the Agreement which embody that offer.  *See* Trustee Declaration at ¶ 16.

19.    The Trustee and Buyer have agreed that the sale embodied in the Agreement will
be subject to higher and better offers.  In that regard, he Trustee has taken or will take the
following steps to market the Assets.  In addition to the bidders who already have expressed an
interest, all existing franchisees, lessors and sublessees will receive notice of this Motion and of
the opportunity to submit higher and better offers.   *See* Trustee Declaration at ¶ 17.

20.    Furthermore, the Trustee has interviewed Debtor's former president, Nick
Butterfield, and Mr. Butterfield has identified certain competitors and others in the industry
which may be interested in purchasing the Assets.  The Trustee will provide to those parties
notice of the opportunity to bid for the Assets and to submit a higher and better offer.  *See*
Trustee Declaration at ¶ 18.

*The Terms of the Agreement*

21.    A summary of the material terms of the Agreement necessary for approval is set
forth below.  Nothing in these statements is meant to or does modify the terms of the Agreement.

22.    Pursuant to the terms of the Agreement, the Trustee will sell to Buyer, or Buyer's
designee, all of the Trustee's right, title and interest in the Assets, comprised of the Trademark,
Goodwill, Accounts Receivable, the Note and, to extent rights remain in favor of the estate or the

Trustee under the Franchise Agreements, those rights as well.  The Purchase Price for the Assets

will be $175,000, payable in a $10,000 deposit ("Deposit") upon execution of the Agreement and

the balance due forty-eight (48) hours following entry of the Court order approving the sale

("Due Date").

23.    The Trustee does not presently intend to seek approval to assume and assign the

Franchise Agreements pursuant to Section 365 of the Bankruptcy Code; however, to the extent

any rights remain in favor of the Trustee or the estate under the Franchise Agreements, those

rights will be assigned to Buyer.

24.    The parties understand and agree that the sale is subject to Court approval and

also is subject higher and better offers.

25.    In the event there exist competing offers for the Assets, the Trustee reserves the

right to conduct a Court-approved auction for the Assets.  Approval of the sale described herein

will be to the offeror who, in the Trustee's sole discretion, has made the highest and best offer.

26.    Within five (5) days of execution of the Agreement by Buyer, the Trustee will

cause to be filed with the Court a motion seeking approval of the sale.  Such motion shall be

scheduled for hearing at the earliest date which complies with the Local Rules of the Court and

which is available on the Court's calendar.

27.    In the event Buyer fails to pay the Purchase Price on or before the Due Date, the

Trustee shall have no recourse against Buyer for the payment of the Purchase Price; provided

however, that the Deposit shall be forfeited to the Trustee, shall become finally and irrevocably

the property of the bankruptcy estate, and shall not be refundable to Buyer.

28.    The Trustee requests Court authorization to sell the Assets to Buyer, or to the

person making the highest and best offer as determined by the Trustee in her sole discretion,

upon the terms set forth in the Agreement.

<em>Competing Offers</em>

29.    As stated above, the sale of the Assets to Buyer is subject to higher and better

offers.  <u>A higher and better offer, however, must exceed the Purchase Price set forth in the</u>

<u>Agreement by at least $10,000</u>.  If the Trustee receives an offer for the Assets that she deems, in

her sole and absolute discretion, to be higher and better (a "<u>Qualified Offer</u>"), then the Trustee

will give prompt written notice to Buyer, as well as to any other parties that have submitted a

Qualified Offer, (i) of the existence of such higher and better offer, and (ii) of her intent to

conduct an auction of the Assets.  *See* Trustee Declaration at ¶ 20.

30.    To be considered a Qualified Offer, the offer must: (a) be submitted to the Trustee

in writing so that it is <u>received by the Trustee and her undersigned counsel by no later than</u>

**<u>Friday, April 3, 2015 at 4:30 p.m. MDT</u>** (the "<u>Bid Deadline</u>"); (b) be accompanied with proof,

acceptable to the Trustee, of ability to pay for the Assets; and (c) a deposit of $10,000.00, which

will be refunded in the event the offer is not ultimately the successful offer.  However, if the

person submitting a Qualified Offer is eventually determined to be the successful bidder, the

$10,000 will not be refunded if the successful bidder fails to close through its own breach of the

Asset Purchase Agreement.  A person submitting a Qualified Offer, in addition, must be willing

to execute an Asset Purchase Agreement substantially in the form of the attached **<u>Exhibit 1</u>**.  *See*

Trustee Declaration at ¶ 21.

31.     Persons or entities who have submitted a Qualified Offer  must attend the auction in person or by telephone, and the Trustee will make appropriate arrangements for any party wishing to take part in the auction telephonically.

32.     Any auction of the Assets will be conducted by the Trustee on **Tuesday, April 7, 2015 at 10:00 a.m. MDT** at the offices of Dorsey and Whitney LLP, 136 South Main Street, Salt Lake City, Utah 84101.  If an auction is held, the Trustee shall determine, in her sole and absolute discretion, which offer made at the auction constitutes the highest and best offer.  <u>In the event of an auction, the Trustee may, in her sole discretion, establish an overbid amount at the auction different than the $10,000 initial overbid amount described above.</u>  *See* Trustee Declaration at ¶ 22.

33.     Immediately after the conclusion of the auction, the Trustee shall report the results of the auction by filing a Notice of Auction Sale with the Court, and it will then be the sale to the winning auction bidder for which Court approval shall be sought pursuant to this Motion.

34.     In the event of an auction, no offer will be deemed to be a winning bid unless the party submitting a Qualified Offer has taken part in the auction, either in person or by telephone (if permitted).

35.     If no competing Qualified Offers are received by the Trustee prior to the Bid Deadline, the Trustee shall not conduct an auction and Buyer shall be the buyer of the Assets for purposes of this Motion.  In that event, Buyer's Deposit will not be refundable, assuming the Court enters the Sale Approval Order.

## RELIEF REQUESTED

36.    By this Motion, the Trustee seeks the entry of an Order approving the sale of the Assets, free and clear of interests and subject to higher and better offers, with valid interests in the Assets, if any, attaching to the net sale proceeds.

37.    The Trustee believes that the sale of the Assets contemplated by the Agreement, the proposed bidding procedures, and the possible auction of the Assets is in the best interests of the estate and will serve to maximize the value of the Assets for the benefit of Debtor's creditors. *Id.* at ¶ 25.

## APPLICABLE AUTHORITY

I.    The Sale of the Assets Out of the Ordinary Course of Business Is Warranted

38.    The Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate."[2]

39.    In order to approve a sale of a debtor's assets outside the ordinary course of business, the Trustee must show that:

    a.    a sound business reason exists for the sale;

    b.    there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer;

    c.    the sale price is fair and reasonable; and

    d.    the proposed buyer is proceeding in good faith.[3]

---

[2] 11 U.S.C. § 363(b)(1).

[3] *See In re Med. Software Solutions*, 286 B.R. 431, 439–40 (Bankr. D. Utah 2002).

40.    The Trustee has met all four parts of this test, and as such, she respectfully requests that the Court grant the relief requested in this Motion by authorizing the proposed sale of the Assets.

### Sound Business Purpose

41.    Courts show great deference to a trustee's decisions.[4] Additionally, a "presumption of reasonableness" attaches to the decisions of those controlling a debtor.[5]

42.    The Trustee submits that the proposed sale of the Assets pursuant to the above terms and procedures is based on sound business judgment, and the Trustee has made an independent and informed decision based on her knowledge of the Assets that the proposed sale terms and procedures are the best way to maximize the value of the Assets for the benefit of the Debtors' creditors.  *See* Trustee Declaration at ¶¶ 25 and 26.

43.    Therefore, in her business judgment, the sale of the Assets pursuant to the Agreement and the terms and procedures described above should be approved.  *Id.*

### Notice of the Proposed Sale Is Appropriate

44.    Adequate and reasonable notice of the proposed sale, including full disclosure of the material terms of the sale, will be made to all interested parties in the Debtors' case.

45.    The Trustee will serve a Notice of Hearing (the "Notice") upon all creditors and parties-in-interest in the Debtors' bankruptcy case, which Notice shall provide, among other things, notice of the hearing on this Motion, a general description of the Assets, the bidding

---

[4] *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

[5] *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986).

procedures, the material terms of the proposed sale and the opportunity to submit a higher and

better offer. *See* Trustee Declaration at ¶ 17.

46.    Moreover, the Trustee will serve a Notice of Hearing on all of Debtors' franchisees,

landlords, subtenants and others who may have expressed an interest in the Assets.  In addition,

the Trustee has interviewed Debtor's former president and obtained from him names of industry

entities which could possibly have an interest in the Assets.  Those entities will receive Notice of

Hearing, an explanation of the bidding procedures, and of the opportunity to submit a higher and

better offer as well. *See* Trustee Declaration at ¶¶ 17 and 18.

47.    The Trustee asserts that the above notice procedures are fair, reasonable, and afford

notice as required under the Bankruptcy Code.

### *Fair and Reasonable Price*

48.    The Trustee believes that the sale of the Assets as proposed herein is fair,

reasonable and will ensure that the estate obtains the highest and best price for the Assets.  In her

business judgment, the Trustee has received a fair and reasonable offer from Buyer to purchase

the Assets for $175,000. *See* Trustee Declaration at ¶ 26.  Additionally, if the Trustee receives a

Qualified Offer, the subsequent auction of the Assets will create a competitive bidding process

that ensures the Assets will be sold for a fair and reasonable price.

### *Good Faith Purchaser*

49.    The Assets will be sold to a good faith purchaser. *Id.* at ¶ 27.

50.    Although the Bankruptcy Code does not define "good faith," the Tenth Circuit has

determined, in the context of 11 U.S.C. § 363(m), that a "good faith" purchaser is "one that buys

in good faith, and for value."[6] Actions that destroy a purchaser's good faith include "fraud, collusion between the purchaser and other bidders or trustee, or an attempt to take grossly unfair advantage of other bidders."[7]

51.    To the best of the Trustee's knowledge, Hendricks is a third-party purchaser who has no connections to the Trustee, the Trustee's professionals, the Office of the United States Trustee or its employees, or the Debtors.  The Trustee and Buyer have engaged in good faith, arms-length negotiations to arrive at the Purchase Price and the terms of the Agreement.  *See* Trustee Declaration at ¶ 27.

52.    Moreover, the sale of the Property to Buyer is subject to higher and better offers. Thus, if the Trustee receives a Qualified Offer, the proposed auction procedures ensure that the Assets are sold for a fair and reasonable value.

53.    Accordingly, the Trustee submits that Buyer is a good faith purchaser for value and is entitled to the protections of 11 U.S.C. §363(m).

### *A Sale of the Property Free and Clear of Interests Is Appropriate*

54.    11 U.S.C. § 363(f) states that a trustee may sell estate property free and clear of interests, if:

(1)    applicable non-bankruptcy law permits the sale of such

property free and clear of such interest;

(2)    such entity consents;

---

[6] *Tompkins v. Frey (In re Bel Air Assocs., Ltd.)*, 706 F.2d 301, 304 (10th Cir. 1983).

[7] *Id.* at 305 n.11 (citation omitted); *see also In re Lotspeich*, 328 B.R. 209 (10th Cir. BAP 2005).

(3)     such interest is a lien and the price at which such property

is to be sold is greater than the aggregate value of all liens

on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable

proceeding, to accept a money satisfaction of such interest.

55.     Because Section 363(f) is in the disjunctive, the satisfaction of any one of the

requirements enumerated therein will warrant the Trustee's proposed sale of the Assets free and

clear of any and all interests.

56.     Other than the current interests held by the Bankruptcy Estate, the Trustee is not

aware of any liens or interests in the Assets. *See* Trustee Declaration at ¶ 14. To the extent any

party asserts a lien against, or interest in the Assets, such party will be adequately protected as

the purported lien or interest will attach to the proceeds of the sale.

## CONCLUSION

WHEREFORE, the Trustee requests that the Court grant this Motion and authorize the

sale of the Assets, free and clear of all interests pursuant to 11 U.S.C. §§ 363(b) and (f) and

subject to higher and better offers, with any valid interests in the Assets attaching to the net sale

proceeds.  Such sale, the Trustee submits, is in the best interests of the estate and the Debtor's

creditors.

DATED this 17th day of March, 2015.

**DORSEY & WHITNEY LLP**

*/s/ Lon A. Jenkins*
Lon A. Jenkins (USB #4060)
Peggy Hunt (USB #6060)
Sarah E. Goldberg (USB #13222)
*Attorneys for Peggy Hunt, Chapter 7 Trustee*

# EXHIBIT 1

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of March *16*, 2015 (the "Execution Date"), is made by and between Peggy Hunt, as the Chapter 7 Trustee (the "Trustee" or "Seller") for the bankruptcy estate of TNX Automotive Services, LLC (the "Debtor"), and Larry Hendricks, or his designee ("Buyer").

## RECITALS

WHEREAS, Seller is the court-appointed trustee under Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), of the Debtor which was the subject of an involuntary petition under Chapter 7 of the Bankruptcy Code on September 26, 2014 (the "Petition Date"), in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court") (Case No. 14-30208) (the "Bankruptcy Case"); an order for relief was entered on November 21, 2014;

WHEREAS, the Debtor represented under oath in its Schedules filed with the Bankruptcy Court that it is the owner of or otherwise has rights related to certain Assets listed on Schedule B and specifically, among other things, that the Debtor attests that it has rights and obligations as franchisor under certain Franchise/License Agreements ("Franchise Agreements"), and a certain Trademark Registration #1144724, U.S. Serial #73146884, allowing Debtor to use and license the name "Tunex," and all rights attendant thereto including the right to pursue actions to terminate unauthorized use of the name "Tunex" ("Trademark"). The foregoing comprises the Debtor's intellectual property, which is to be construed in the broadest terms, and the Debtor has established goodwill through the use of the name "Tunex" ("Intellectual Property and "Goodwill"). In addition, the Debtor has represented on its Schedule B filed with the Bankruptcy Court that it owns and has rights in certain accounts receivable owing to Debtor by certain of its franchisees/licensees ("Accounts Receivable") and a Note owing to the Debtor by Karl Mason, a franchisee ("Note"). Finally, the Debtor has represented under oath on its Schedule B that it owns certain owns certain equipment and tools ("Equipment") which it has used in its business operations;

WHEREAS, the Buyer is a creditor of the Debtor and asserts a claim in the amount of $245,586 against the Debtor ("Claim");

WHEREAS, Buyer, or its designee, desires to purchase certain assets as defined in Section 1.1 below from Seller, and Seller desires to sell, convey, assign and transfer to Buyer, or its designee, the Assets, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with Sections 105 and 363 and other applicable provisions of the Bankruptcy Code; and

WHEREAS, the Assets shall be purchased by Buyer, or its designee, pursuant to the Bankruptcy Sale Order approving such sale pursuant to Sections 105 and 363 of the Bankruptcy Code, all in the manner and subject to the terms and conditions set forth in this Agreement and the Bankruptcy Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## STATEMENT OF AGREEMENT

NOW THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

## ARTICLE 1

## PURCHASE AND SALE OF THE ASSETS TO BUYER

SECTION 1.1      Transfer of the Assets

Upon the terms and conditions herein set forth, Seller shall sell and assign to Buyer or its designee, and Buyer or its designee shall acquire from Seller, all right, title and interest of Seller in, to and under the Assets.  As used herein, the term "Assets" shall mean all of the rights of Seller of whatever kind and nature that are described below:

(a)     All of Debtor's interest in the Trademark, the Intellectual Property, the Goodwill, the Accounts Receivable, the Note and any rights Debtor may continue to have under the Franchise Agreements, listed on the attached **Exhibit A**, all as defined in the foregoing Recitals.

SECTION 1.2      Excluded Assets.

All assets of Debtor not expressly included in the definition of "Assets" in Section 1.1 above, including, without limitation, all Equipment, which shall be sold separately, and Cash.

## ARTICLE 2

## PURCHASE PRICE

SECTION 2.1      Purchase Price

(a)     The aggregate consideration and purchase price (the "Purchase Price") for the sale, transfer, assignment and conveyance of the Assets will be $175,000, payable within forty-eight (48) hours of the entry of the Bankruptcy Sale Order.

(a)     The Purchase Price will be paid as follows: (i) Buyer will make an initial down payment of $10,000.00 (the "Deposit") to the Seller upon execution of this Agreement; (ii) the remaining balance of the Purchase Price must be paid in full within forty-eight (48) hours of the entry of the Bankruptcy Sale Order (the "Due Date").  Buyer shall pay the Purchase Price to Seller by means of a wire transfer or the delivery of other certified or immediately available funds to Seller.

SECTION 2.2       Non-Refundable Deposit

In the event Buyer fails to pay the Purchase Price on or before the Due Date either because Buyer terminates this Agreement before or after entry of the Bankruptcy Sale Order by the Bankruptcy Court, Seller shall be entitled to retain any and all interests in and to the Assets and the Deposit, which Deposit shall be forfeited to Seller and shall become finally and irrevocably the property of the Bankruptcy Estate.

SECTION 2.3       Allocation of Purchase Price

The Purchase Price shall be allocated as follows:  $100,000 to the Trademark and Goodwill; $75,000 to the Accounts Receivable and the Note.

ARTICLE 3

REPRESENTATIONS AND WARRANTIES

SECTION 3.1       Representations and Warranties of Seller

Seller hereby represents and warrants to Buyer as follows:

(a)       Organization.  Seller is the court-appointed Chapter 7 Trustee of Debtor.

(b)       No Conflict or Violation.  Subject to the Bankruptcy Court's entry of the Bankruptcy Sale Order approving the sale of the Assets, the execution, delivery and performance by Seller of this Agreement does not and will not violate or conflict with any provision of the in the Bankruptcy Case.

(c)       No Impairment of Assets.  During the period between execution of this Agreement by the parties and the Bankruptcy Court's ruling on the Bankruptcy Sale Motion (defined below), Seller shall not impair or sell any portion of the Assets or settle disputes arising under or related to the Assets without the consent of Buyer.

(d)       Disclaimer of Other Representations and Warranties.  Except as expressly set forth in this Section 3.1, Seller makes no representation or warranty, express or implied, at law or in equity, in respect of Seller, the Assets, including with respect to title, the Trustee's ability to obtain or transfer title, merchantability or fitness for any particular purpose and any such other representations or warranties which are hereby expressly disclaimed.  Buyer hereby acknowledges and agrees that, except to the extent expressly set forth in this Section 3.1, Buyer is purchasing the Assets on an "as is, where is, if is, with all faults" basis and disclaims all warranties or guarantees, whether express or implied.  Seller shall not be liable in contract or in tort for any special, incidental, liquidated, punitive or consequential damages relating to the Assets.  For avoidance of doubt, Seller will not seek authority of the Bankruptcy Court to assume and assign the Franchise Agreements; however, Seller assigns hereunder whatever rights, if any, the bankruptcy estate may continue to have under the Franchise Agreements.

3

SECTION 3.2     Representations and Warranties of Buyer

Buyer hereby represents and warrants to Seller as follows:

(a)     Corporate Organization.  Buyer is an individual and has all requisite power and
        authority to own his properties and assets and to conduct his businesses as now
        conducted.

(b)     Authorization and Validity.  Buyer has all requisite power and authority to enter
        into this Agreement and to perform his obligations hereunder.  This Agreement
        has been duly executed by Buyer and constitutes Buyer's valid and binding
        obligations, enforceable against him in accordance with their respective terms
        except as may be limited by bankruptcy or other laws affecting creditors' rights
        and by equitable principles.

(c)     No Conflict or Violation.  The execution, delivery and performance by Buyer of
        this Agreement does not and will not (i) violate any provision of law, or any order,
        judgment or decree of any court applicable to Buyer or (ii) violate or result in a
        breach of or constitute (with due notice or lapse of time or both) a default under
        any contract to which Buyer is party or by which Buyer is bound or to which any
        of Buyer's properties or assets is subject.

SECTION 3.3     Warranties Are Exclusive

        The parties acknowledge that the representations and warranties contained in this
Section 3 are the only representations or warranties given by the parties and that all other express
or implied warranties are disclaimed.

## ARTICLE 4

## COVENANTS AND OTHER AGREEMENTS

SECTION 4.1     Bankruptcy Actions

(a)     Bankruptcy Sale Motion.  The parties to the Agreement agree and understand the
        sale of Assets to Buyer contemplated herein is subject to and contingent on
        approval of the Bankruptcy Court.  Not more than five (5) days after execution of
        this Agreement, Seller will file with the Bankruptcy Court a motion seeking
        approval of this Agreement (the "Bankruptcy Sale Motion") and, in connection
        therewith, will set a hearing date on the Bankruptcy Sale Motion at the earliest
        possible date which complies with the Local Rules of the Bankruptcy Court, is
        acceptable to the Bankruptcy Court, and is available on the Bankruptcy Court's
        calendar.  Buyer agrees to use his best efforts in cooperating with the Trustee to
        obtain Bankruptcy Court approval of this Agreement in accordance with all
        applicable law.

(b) <u>Bankruptcy Sale Order</u>. For purposes of this Agreement, the term "<u>Bankruptcy Sale Order</u>" shall mean the order of the Bankruptcy Court entered pursuant to Section 363 of the Bankruptcy Code (A) approving this Agreement and the transaction contemplated with Buyer hereby; (B) confirming that Buyer is acquiring the Assets free and clear (except as otherwise provided herein), with valid liens, if any, to attach to the proceeds of sale; and (C) retaining jurisdiction of the Bankruptcy Court to interpret and enforce the terms and provisions of this Agreement.

(c) <u>Sale Subject to Higher and Better Offers</u>. Buyer understands and agrees that the sale of the Assets to Buyer is subject to Bankruptcy Court approval and subject to higher and better offers. If a higher and better offer is received by Seller in the time established in the Bankruptcy Sale Motion, Seller will immediately notify Buyer and Buyer will have an opportunity to submit a higher bid prior to or in connection with an auction of the Assets. Buyer understands that, depending on the existence of higher and better offers, Seller may seek Bankruptcy Court authority to conduct a Bankruptcy Court-approved auction for the Assets on such terms and at such time as the Trustee reasonably determines is necessary to maximize the value of the Assets.

(d) <u>Notice and Reasonable Efforts</u>. Seller will provide notice of the hearing on the Bankruptcy Sale Motion as required by the Bankruptcy Code and the Bankruptcy Rules and other applicable law to all parties entitled to notice in the Bankruptcy Case and to such other parties as the Seller determines is reasonably calculated to maximize the value of the Assets. Seller shall take all reasonable actions, in her sole discretion, to cause the Bankruptcy Sale Order to be issued, entered and become a Final Order and Buyer shall cooperate, to the extent reasonable necessary, in Seller's efforts.

SECTION 4.2    <u>Buyer's Waiver of Claim</u>

The Buyer hereby agrees that the Claim in the amount of $245,586 which Buyer holds against the Debtor as of the Petition Date, whether asserted in the Proof of Claim or not, shall be and hereby is waived and disallowed and Buyer shall be entitled to no distribution therefrom.

SECTION 4.3    <u>Good Faith Purchaser</u>

The parties hereto agree and understand that Buyer is a "good faith" purchaser of the Assets for value, that Buyer has no connection to Seller, Seller's professionals, the Debtor or the Office of the United States Trustee, and that this Agreement is the result of good faith, arms-length negotiations. Accordingly, Seller will request the Bankruptcy Court, as part of the Bankruptcy Sale Order, to afford Buyer the protections provided by 11 U.S.C. §363(m).

## ARTICLE 5

### TERMINATION

SECTION 5.1    Conditions of Termination

This Agreement may be terminated only in accordance with this Section 5.1.  This Agreement may be terminated at any time before the Due Date or immediately following the Due Date, as follows:

(a)    By mutual written consent of Seller and Buyer;

(b)    Immediately and automatically (without any further action of Buyer or Seller), if the Bankruptcy Court shall enter a Final Order approving the sale of the Assets to any Person other than the Buyer;

(c)    Immediately and automatically (without any further action of Buyer or Seller), if the Bankruptcy Court fails to enter the Bankruptcy Sale Order;

(d)    By Seller, in Seller's sole discretion, if the Deposit has not been timely paid or the Purchase Price has not been received by the Seller by the Due Date.

SECTION 5.2    Effect of Termination

In the event of termination pursuant to Section 5.1, this Agreement shall become null and void and have no effect (other than those provisions of that expressly survive termination). However, as described above in Section 2.2, even in the event of termination by Buyer, Seller shall be entitled to retain the Deposit made by the Buyer pursuant to this Agreement.

## ARTICLE 6

### SURVIVAL

SECTION 6.1    Survival

Each of the representations and warranties, covenants and agreements of Seller and Buyer made in this Agreement shall not survive this Agreement; provided, however, that any covenant or agreement in this Agreement which, by its terms, is to survive, shall survive only for the duration of such covenant or agreement.

SECTION 6.2    Covenant Not to Sue

(a)    On and after the transfer of the Assets, Buyer covenants and agrees not to sue or otherwise bring any Claim or action against the Seller or any of the current and former employees, agents, managers, advisors, attorneys, accountants and representatives (in their capacity as such and in no other capacity) of the Seller (collectively, the "Seller Group Representatives"), with respect to any and all

Claims based in whole or in part upon any act, omission, transaction, event or other occurrence taking place at any time on or before the transfer of the Assets.

(b)     On and after the transfer of the Assets, Seller covenants and agrees not to sue or otherwise bring any Claim or action against the Buyer or any of the current and former employees, agents, managers, advisors, attorneys, accountants and representatives (in their capacity as such and in no other capacity) of the Buyer (collectively, the "Buyer Group Representatives"), with respect to any and all Claims based in whole or in part upon any act, omission, transaction, event or other occurrence taking place at any time on or before the transfer of the Assets.

(c)     Notwithstanding any other term in this Agreement to the contrary, the waivers, covenants and agreements contained in this Section 6.2 shall survive the Closing and shall bind and inure to the benefit of, as the case may be, the Buyer and its successors and assigns and the Seller, its estate, creditors, successors and assigns.

ARTICLE 7

MISCELLANEOUS

SECTION 7.1     Joint Drafting

The parties have participated jointly in the negotiation and drafting of this Agreement and both have had the opportunity to consult with counsel of their choosing. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

SECTION 7.2     Further Assurances

At the request and the sole expense of the requesting party, Buyer or Seller, as applicable, shall execute and deliver, or cause to be executed and delivered, such documents as Buyer or Seller, as applicable, or their respective counsel may reasonably request to effectuate the purposes of this Agreement.

SECTION 7.3     Successors and Assigns

This Agreement shall be binding on and inure to the benefit of Buyer and Seller and their respective successors and permitted assigns. No party may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written consent of the other party which shall not be unreasonably withheld.

SECTION 7.4     Governing Law; Jurisdiction

This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Utah (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law. The parties irrevocably elect, as the sole judicial forum for

the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.

SECTION 7.5      Expenses

Each of the parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby.

SECTION 7.6      Severability

In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of (a) the Execution Date and (b) the date this Agreement was last amended.

SECTION 7.7      Notices

(a)      All notices, requests, demands, consents and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via email to the email address given below; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service addressed to the party to whom notice is to be given; or (iv) on the third day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Peggy Hunt, Trustee
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 933-7360
Email: hunt.peggy@dorsey.com

With a copy (which shall not constitute notice) to:

Lon A. Jenkins
Dorsey & Whitney, LLP
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 933-7360
Email: jenkins.lon@dorsey.com

8

If to Buyer:      Larry Hendricks

_____

_____
Telephone:  (801) 550-7487
Email: sluggerlarry@comcast.net

With a copy (which shall not constitute notice) to:

_____

_____

_____
Telephone: _____
Email: _____

(b)     Any party may change its address or email address for the purpose of this Section 7.7 by giving the other parties written, email notice of its new address.

SECTION 7.8     Amendments; Waivers

This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by Buyer and Seller, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

SECTION 7.9     Entire Agreement

This Agreement contains the entire understanding among the parties with respect to the transactions contemplated hereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions.  Any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

SECTION 7.10     No Third Party Beneficiaries

Except as set forth in Sections 6.2, nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns.  Nothing in this Agreement is intended to or shall relieve or discharge the obligation or liability of any third Persons to Sellers or to Buyer.  Except as set forth in Sections 6.2, this Agreement is not intended and shall not give any third Persons any right of subrogation or action over or against Seller or against Buyer.

SECTION 7.11     Headings

9

The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

SECTION 7.12    Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.

SECTION 7.13    Construction

Any reference to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation. Any reference to the singular in this Agreement shall also include the plural and vice versa.

ARTICLE 8

DEFINITIONS

As used in this Agreement, the following terms have the following meanings:

"Agreement" has the meaning set forth in the Preamble.

"Assets" has the meaning set forth in Section 1.1.

"Bankruptcy Case" has the meaning set forth in the Recitals.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bankruptcy Rules" has the meaning set forth in the Recitals.

"Bankruptcy Sale Motion" has the meaning set forth in Section 4.1(a).

"Bankruptcy Sale Order" has the meaning set forth in Section 4.1(b).

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Salt Lake City, Utah are authorized by law or other governmental action to close.

"Buyer" has the meaning set forth in the Preamble.

"Claim" has the meaning given that term in Section 101(5) of the Bankruptcy Code and includes, *inter alia*, all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations, and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"Deposit" has the meaning set forth in Section 2.1.

"Execution Date" has the meaning set forth in the Preamble.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the implementation, operation or effect of which has not been stayed and as to which order (or any revision, modification or amendment thereof) the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken and is pending.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, or unincorporated organization.

"Purchase Price" has the meaning set forth in Section 2.1.

"Seller" has the meaning set forth in the Preamble.

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed by their respective officers thereunto duly authorized as of the Execution Date.

LARRY HENDRICKS                          PEGGY HUNT, TRUSTEE


_____                _____
Larry Hendricks, individually            Peggy Hunt, in her capacity as Chapter 7
                                         Trustee for the Bankruptcy TNX Automotive
                                         Services, LLC (Case No. 14-30208, United
                                         States Bankruptcy Court for the District of
                                         Utah)

11

# EXHIBIT "A"

| Location | Licensee | Royalty and Trademark Amount |
|---|---|---|
| American Fork | CK Automotive Services LLC | $17,479 |
| Bountiful | MR Quality Auto, LLC | $12,447 |
| Cedar City | Boyick LLC | $83,286 |
| Draper | CM Fox Automotive LLC | $25,750 |
| Heber | RHA, LLC | $19,596 |
| Idaho Falls (Grand Teton) | Tunex | $4,229 |
| Layton | Cory S. Lloyd | $9,023 |
| Murray | Minh Quach | $5,811 |
| Sandy | Stay Tuned Automotive LLC | $10,304 |
| South Jordan | Disque Automotive LLC | $18,061 |
| South Ogden | Michael James Gouldby | $22,158 |
| Springville | Performance Automotive LTD | - |
| Sugarhouse | MMCD Sugarhouse LLC | $3,331 |
| West Jordan | M-K, Inc. | $6,431 |
| West Valley | Good Onya LLC | $13,866 |